COLORADO COURT OF APPEALS                                    2017COA96

Court of Appeals No. 16CA1533
Weld County District Court No. 16JV35
Honorable W. Troy Hause, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of C.S., a Child,

and Concerning J.S.,

Respondent-Appellant.

APPEAL DISMISSED

Division VI
Opinion by JUDGE FURMAN
Terry and Carparelli*, JJ., concur

Announced July 13, 2017

Bruce T. Barker, County Attorney, Linda L. Goff, Assistant County Attorney,
Greeley, Colorado, for Petitioner-Appellee

The Gregory Law Firm, LLC, Christopher S.P. Gregory, Fort Collins, Colorado,
for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1    The Weld County Department of Human Services (Department) filed a motion with the juvenile court to dismiss a dependency and neglect petition involving C.S. (child).  J.S. (father) agreed to the dismissal, but he requested that administrative findings of child abuse made by the Department against him be expunged pursuant to sections 19-3-313.5(3)(f), C.R.S. 2016, and 19-3-505(6), C.R.S. 2016.  The court granted the Department's motion to dismiss and denied father's request.  The court also denied father's motion for reconsideration.

¶ 2    Father appeals.  We conclude that the orders from which father seeks to appeal are not final and appealable.  We thus dismiss his appeal for lack of jurisdiction.

I.  The Department's Involvement

¶ 3    In March 2016, the Department filed a petition in dependency and neglect based on a report that the child, then four months old, had suffered injuries that were consistent with being shaken.  When the injuries occurred, B.F. (mother) was at work and father, an emergency medical technician (EMT), was caring for the child.  Father reported that the child had choked while being fed and had become unresponsive.  Father stated that he called for emergency

1

assistance, gave the child blows on the back, and began cardiopulmonary resuscitation. He denied shaking the child.

¶ 4        The juvenile court placed the child in mother's protective custody and ordered father to have only supervised visits with the child.

¶ 5        Father denied the allegations in the petition and requested a jury trial. In the meantime, mother made a no-fault admission that the child was without proper care; the court entered a deferred adjudication as to her.

¶ 6        The juvenile court scheduled father's five-day jury trial for July 2016.

¶ 7        The parties filed their lists of witnesses and exhibits in June. Father's list included several medical experts who were prepared to testify that the medical records they had reviewed were not consistent with the theory that father had shaken the child, but rather suggested that the child's injuries were the result of natural causes. He also identified coworkers and others who would testify to his love for the child, his parenting abilities, his trustworthiness, and his ability to handle stressful situations. Father filed a number of motions in limine to prohibit the introduction of some evidence,

limit the use of other evidence, and place additional restrictions on the manner in which the Department could present its case.

¶ 8 The parties appeared before the juvenile court for a combined pretrial readiness conference as to father and dispositional hearing as to mother. The Department immediately informed the court that it had concluded that mother was "perfectly appropriate" and "adequately protective," and accordingly, it was recommending that mother be allowed to "withdraw her plea," and that the case be dismissed as to mother and father. The child's guardian ad litem (the GAL) concurred.

¶ 9 Father stated that he would agree to the case being dismissed "with a rather large caveat." He requested the court to make it clear that it was dismissing the case because the Department had stated or taken the position that it could not proceed with the evidence that it had. He contended that under section 19-3-505(6), such a result would obligate the Department to expunge the administrative findings made during the course of the case. This was important to father because, as an EMT, an administrative child abuse finding against him was a "big deal."

¶ 10   The court responded that father had the right to an administrative hearing on the Department's child abuse finding. Father argued that an administrative hearing was not the same as having a jury or even a court hearing because there were "certain rights and procedures" that would be available in a court proceeding but not in an administrative proceeding. He also argued that allowing the Department to make an accusation and "then only go halfway and leave this up to the administrative courts in Denver is not due process within [the] sense of what it should be." He reiterated that if the court granted the motion to dismiss, it should do so in a way that would allow the dismissal to be viewed as "some sort of stipulation" that would permit the court to enter a finding that the child was not dependent and neglected. In turn, that finding would require the expungement of the administrative record.

¶ 11   The Department responded that it was "not required" to proceed with the case, nor could it be required to stipulate to any factual findings.

¶ 12    The court agreed that it could not require the Department to prosecute the case.  The court then dismissed the case, finding that father could obtain due process through an administrative hearing.

¶ 13    On appeal, father contends that the juvenile court denied him a fundamentally fair proceeding when it dismissed the dependency and neglect case without also ensuring the expungement of the administrative child abuse finding that led to the filing of the dependency and neglect case.

## II.  Jurisdiction

¶ 14    We conclude that the court's dismissal order is not final and appealable.

¶ 15    The Department contends that neither the juvenile court nor this court has jurisdiction to grant father the relief that he seeks because the appeal of an administrative finding of child abuse has its own administrative process, which includes an appeal to a district court after an administrative law judge hearing.  *See* Dep't of Human Servs. Rules 7-111 to -115, 12 Code Colo. Regs. 2509-2 (providing an administrative appeal process for persons found responsible for an incident of child abuse or neglect by the Department); *see also* § 24-4-106, C.R.S. 2016.  We agree and

5

conclude that section 19-3-505(6) does not give the juvenile court authority to order expungement of child abuse and neglect records and reports, and the court's order granting the parties' voluntary dismissal of the petition in dependency and neglect is not final and appealable. We thus dismiss father's appeal.

¶ 16 Whether the legislature has authorized the juvenile court to entertain a motion to expunge dependency and neglect findings is a question of statutory interpretation.

¶ 17 Statutory construction presents a question of law that an appellate court reviews de novo. *Spahmer v. Gullette*, 113 P.3d 158, 161 (Colo. 2005). In construing a statute, we attempt to give effect to the intent of the legislature, looking first to the plain language of the statute. *Id.*

¶ 18 Section 19-3-505(6) provides as follows:

> When the court finds that the allegations of the petition are not supported by a preponderance of the evidence, the court shall order the petition dismissed and the child discharged from any detention or restriction previously ordered. His or her parents, guardian, or legal custodian shall also be discharged from any restriction or other previous temporary order. The court shall inform the respondent that, pursuant to section 19-3-313.5(3)(f), the department shall

expunge the records and reports for purposes related to employment or background checks.

¶ 19    Section 19-3-313.5(3)(f) provides, in pertinent part, as follows:

> (3) Notice and appeals process -- rules.  On or before January 1, 2004, the state board, in consideration of input and recommendations from the county departments, shall promulgate rules to establish a process at the state level by which a person who is found to be responsible in a confirmed report of child abuse or neglect filed with the state department pursuant to section 19-3-307 may appeal the finding of a confirmed report of child abuse or neglect to the state department. At a minimum, the rules established pursuant to this subsection (3) shall address the following matters, consistent with federal law:
>
> . . . .
>
> (f) Provisions requiring, and procedures in place that facilitate, the prompt expungement of and prevent the release of any information contained in any records and reports that are accessible to the general public or are used for purposes of employment or background checks in cases determined to be unsubstantiated or false; except that, the state department and the county departments of social services may maintain information concerning unsubstantiated reports in casework files to assist in future risk and safety assessments.

¶ 20    We construe section 19-3-505(6) to mean that if a juvenile court finds that the allegations of a petition in dependency and

7

neglect are not supported by a preponderance of the evidence, the juvenile court is not authorized to enter any judgment, decree, or order involving the expungement of administrative findings of dependency and neglect. Instead, the court's role is limited to informing the respondent that "pursuant to section 19-3-313.5(3)(f), the department shall expunge the records and reports for purposes related to employment or background checks." § 19-3-505(6).

¶ 21  In any event, in this case the juvenile court did not determine whether the allegations of the petition are supported by a preponderance of the evidence. The Department effectively withdrew the dependency and neglect petition when it asked the court to dismiss the case; the court granted the dismissal without making findings of fact or conclusions of law. Thus, the court did not enter a judgment, decree, or order regarding the merits of the case.

¶ 22  Generally, we have initial jurisdiction over appeals from final judgments, decrees, or orders from the juvenile court. § 13-4-102, C.R.S. 2016. Concerning appeals in dependency or neglect proceedings, C.A.R. 3.4(a) permits a party to appeal judgments, decrees, or orders as permitted by section 19-1-109(2)(b) and (c),

C.R.S. 2016.  Section 19-1-109(2)(b) and (c), which also governs appeals in dependency and neglect cases, permits appeals of the following orders:

> (b) An order terminating or refusing to terminate the legal relationship between a parent or parents and one or more of the children of such parent or parents on a petition, or between a child and one or both parents of the child, shall be a final and appealable order.
>
> (c) An order decreeing a child to be neglected or dependent shall be a final and appealable order after the entry of the disposition pursuant to section 19-3-508.

*See also People in Interest of S.M-L.*, 2016 COA 173, ¶ 15 (*cert. granted* Mar. 27, 2017).

¶ 23    Because the juvenile court did not enter a final judgment, decree, or order, we do not have jurisdiction to hear father's appeal. *See* C.A.R. 3.4(a).

## III.  Conclusion

¶ 24    Father's appeal is dismissed.

JUDGE TERRY and JUDGE CARPARELLI concur.